UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSIE E. JONES #260563,

                Plaintiff,                        Case No. 2:08-cv-110

v.

                                          Honorable R. Allan Edgar

RICHARD STAPLETON, et al.,

                Defendants.

_____/

## OPINION

Plaintiff Jessie E. Jones #260563, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Hearing Administrator and LMF Hearing Officer Linda Maki. Plaintiff alleges in his complaint that on October 7, 2007, he was issued a major misconduct report for being out of place. Plaintiff requested witnesses and 24 hours notice. On October 23, 3007, an administrative hearing was held and Defendant Maki dismissed the misconduct report, stating that the lack of memory on the part of the author of the report as to the date of the alleged incident led to the initial dismissal of the report. Approximately thirty minutes later, Plaintiff was informed by custody staff that Defendant Maki would be conducting a second hearing on the dismissed misconduct. Defendant Maki admitted that when she had returned to her office and reviewed the number of not guilty findings for the month, she found that a "not guilty" finding for Plaintiff on the October 7, 2007, misconduct would violate the MDOC requirement of a 90% conviction rate. Plaintiff was subsequently found guilty in violation of his due process rights and was sentenced to the forfeiture of 25 days from his minimum and maximum release date, and 7 days loss of privileges.

Plaintiff states that he filed a complaint with Defendant Stapleton, who refused to take corrective action. On November 5, 2007, Plaintiff filed a request for rehearing, which was denied by Defendant Stapleton on January 17, 2008. Plaintiff's complaint asserts that he is suing Defendants in their official capacities only and is seeking compensatory and punitive damages, as well as injunctive relief.

On September 26, 2008, this court dismissed Plaintiff's complaint for failure to state a claim upon which relief can be granted (docket #10 and #11). Plaintiff appealed the dismissal and on June 9, 2009, the Sixth Circuit remanded Plaintiff's complaint with regard to his claims for injunctive relief, noting that the district court had improperly determined that Plaintiff's allegations were not cognizable under § 1983. *See Jones v. Stapleton, et al.*, No. 08-2298, slip op. at p. 3. The Sixth Circuit held that Plaintiff's claims for injunctive relief are not barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) or *Edwards v. Balisok*, 520 U.S. 641 (1997) because the forfeiture of disciplinary credits does not necessarily impact the duration of his confinement. *Jones v. Stapleton, et al.*, No. 08-2298, slip op. at p. 4. However, the Sixth Circuit noted that Plaintiff's claims for injunctive relief were somewhat vague and that, on remand, Plaintiff should clarify exactly what manner of injunctive relief he is seeking. *Id.*

On July 8, 2009, Plaintiff filed a supplemental pleading (docket #22) in which he states that he is seeking the following injunctive relief against Defendants Maki and Stapleton: that they immediately cease the 90% guilty findings policy and statistics tracking system, and that they immediately cease conducting any disciplinary hearings or appeals in cases involving Plaintiff. In addition, on November 3, 2009, Plaintiff was granted leave to file an amended complaint to add Defendant Caruso and to sue all Defendants in their individual and official capacities, and to seek compensatory and punitive damages.

Presently before the Court are the Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed responses and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In his complaint, Plaintiff alleges that on October 23, 2007, after conducting a hearing with regard to an "out of place" misconduct violation, Defendant Maki reviewed the number of misconduct convictions for the month and conducted a second misconduct hearing without a second ticket being written. Plaintiff claims that Defendant Stapleton approved and permitted a policy of a mandatory 90% guilty findings by hearing officers. Plaintiff claims that this violated his due process rights and resulted in a misconduct conviction, which cost Plaintiff 7 days loss of privileges and the forfeiture of 25 days of disciplinary credits. On October 23, 2007, Plaintiff notified Defendant Stapleton of Defendant Maki's alleged misconduct and Defendant Stapleton responded that Plaintiff should file a request for rehearing contesting the second hearing. Plaintiff's request for rehearing was denied on January 17, 2008.

In her affidavit, Defendant Maki denies the existence of any requirement for a 90% guilty finding rate by the Michigan Department of Corrections (MDOC) or by the State Office of Administrative Hearings and Rules (SOAHR). Defendant Maki further states that she has never kept track of her guilty / not guilty rate. (Defendants' Exhibit A, ¶ 5.) Defendant Stapleton attests that at the time of Plaintiff's misconduct conviction, MDOC Policy Directive 03.03.105 ¶ II provided that no statistics were to be kept on guilty, not guilty or dismissal rates of individual SOAHR Hearing Officers, and that Hearing Officers were not to be threatened with or subjected to disciplinary action because of the number or percentage of hearings conducted which resulted in other than a guilty finding. (Defendants' Exhibit B, ¶ 8.) Defendants also offer a copy of the applicable policy directive. (Defendants' Exhibit B-1, p. 10.)

In response to Defendants' motion for summary judgment, Plaintiff notes that Defendant Maki does not dispute that on October 23, 2007, she dismissed a major misconduct report of "out of place" which had been written on Plaintiff, but approximately 30 minutes later, she

contacted custody staff and informed them that she would be conducting a second misconduct hearing on the previously dismissed misconduct. Plaintiff offers a copy of an October 23, 2003, Memorandum from M. D. Becker, entitled "September, 2003 Reviewing Officer Statistics. This memo lists the number of charges, guilty findings, not guilty findings, and percentage of guilty findings for each of twenty named hearing officers. The memo also states:

> Staff should be striving for a 90% standard for guilty tickets. Anything below that is unacceptable. This monthly report will be reviewed to determine training for staff as indicated by the percentages below.

(Plaintiff's Exhibit 2.) Plaintiff claims that the only reason he was found guilty of a misconduct on October 23, 2007, was because of this policy, which constitutes a violation of Plaintiff's due process rights.

In response to this memorandum evidence, Defendants offer the affidavit of Mark Dustin Becker, who attests that he did not create the memorandum and believes that the document is a forgery. Moreover, Becker states that he did not use the type of font that was used in creating the memo, that some of the memo appears to have been written over and some words retraced, and that the initials on the bottom of the memo do not reflect the initials of anyone that Becker can recall working with during the pertinent time period. (Defendants' Exhibit E, ¶¶ 5-7.) Plaintiff fails to come forward with any evidence in response to Becker's affidavit. Nor does Plaintiff explain how or where he obtained the memo which was allegedly created by Becker.

Regardless of whether such a policy actually existed, the court notes that the purported policy states that "Staff should be striving for a 90% standard for guilty tickets," not that hearing officers were required to have such findings. The focus of this policy could easily be towards the staff writing the tickets, in an effort to prevent the writing of frivolous tickets. Moreover, a review of the

hearing report shows that the hearing officer's conclusion that Plaintiff was guilty of the misconduct

charge was supported by the record. Under Michigan law a prisoner is entitled to notice of a hearing,

and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not

bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly

relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing

officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.*

> According to the hearing report, the following evidence / statements were considered:

> Misconduct report, investigator report, statements from Tyner, Kleeman, Perala, Haywood, LaFlamme, Taylor, Peacock and prisoner's statements read to the prisoner. At the hearing the prisoner submitted a statemetn and stated that he told Kleeman he lost his ID card that morning when he discovered it was gone. He asked Kleeman for a temporary and officer told him to go on ahead without it and look for it when he returned. Then he went to yard and the officer asked for his ID card. He didn't have it, but it had already been turned in. He lost it the day before, when he went to yard. Because the Hearing Officer had a few questions for Kleeman, Kleeman was requested to come into the hearings room. Kleeman stated that he doesn't know what day that the prisoner reported the lost ID card to him. Jones told him about his ID card in the morning, he told him to look for it, and then later that day Lt. Taylor called him and told him he had Jones' ID card and it was sent over. He just doesn't know if this happened the day before the ticket, the day of the ticket or when. He just doesn't know. Prisoner present during this exchange. Prisoner had nothing to add to the record. Prisoner informed of the decision prior to leaving the hearings room.

> After the Hearing Officer left the prisoner's unit, Hearing Officer realized that another important question needed to be asked on the matter. Hearing resumed with both the prisoner and Kleeman on the same day. Kleeman was asked when he gave the prisoner his ID card back to him and he stated that it was on the same day that the prisoner had reported it lost to him. He gave it to him at lunch time - before the officer went home. Prisoner stated that he had reported it lost twice. He reported it the day before when he was going to get his quartermaster. That was a Sunday and Kleeman had told him, "Why are you telling me?" Then he reported it again before he left to go to his weight detail on Monday. Kleeman was asked if this was true and

he stated that he didn't remember the prisoner saying anything to him on Sunday. It must have been Monday because the prisoner was going to his weight detail when he told him to go ahead and if there was any problem to have the officer call him and he would go straight [sic] it out with the officer. That is when he told the prisoner to look for it when he got back from his detail. Prisoner confirmed that he went to his yard detail at 1330. Prisoner had no other comment when asked other than to object to the hearing resuming as this was just double jeopardy. Prisoner informed of the decision and sanction prior to leaving the hearings room.

(Plaintiff's Exhibit 1.)

In the reasons for finding section of the hearing report, Defendant Maki noted:

DOUBLE JEOPARDY: "Double jeopardy" is inapplicable in a misconduct hearing. It was apparent, before the decision was finalized in writing, that there had been an [sic] serious omission in the record. Hearing Officer reconvened the hearing to clarify the record and correct the decision.

VIDEO: The video is irrelevant. It has no audio. It would not prove if the prisoner asked to go back to the dip bar area or not.

OUT OF PLACE: On 10/7/07 the prisoner did not have his ID card. Prisoner had no authorization to be out of his unit without his ID card. Prisoner claims that he lost his ID card and when he discovered it missing, he reported it to Kleeman, his unit officer, and asked for a temporary ID card. Kleeman did not give him a temporary, but authorized him to be without it. He then went to yard, not knowing it had already been turned in. Prisoner is not believed in his claims and his claims do not present him with a defense. First, on the prisoner's first story, if he had reported it missing in the morning, it had already been returned to the prisoner by the time that the prisoner had left the unit to leave for his yard detail at 1330. Prisoner would have no authorization to leave his unit without it. Second, if the prisoner's second story is examined, it doesn't make any sense because the ticket was written on the 7th, Sunday, not the 8th, Monday. Prisoner had alraedy received the ticket by the time that he told Kleeman that he had lost his ID card. It is very clear, after all the smoke thrown by the prisoner is cleared, that the prisoner attempted to manipulate the entire process. Prisoner did not have his ID card on him on 10/7/07, when he went to the yard, in the afternoon. In an attempt to defeat the misconduct report, the prisoner arranged with Hayward to turn in his ID card to staff at lunch the following day. He also told Kleeman,

7

before he went to weights on Monday, that the had lost his ID card and asked for a temporary. Hayward turned in the prisoner's ID card at noon and his ID card was delivered to the unit and Kleeman gave it to him. Six days after the prisoner was at yard without his ID card Kleeman was asked about the ID card. No one recalled what date this occurred, but did remember the prisoner's ID card being found and prisoner asked for a temporary ID card. This lack of memory as to the date that this happened led to the initial dismissal of the misconduct report unitl the Hearing Officer asked a couple of more questions and with those couple more questions, it became apparent that the prisoner had tried to create a defense after the fact by claiming that he had reported his lost ID card before he showed up on the yard without it. Prisoner's charge in his story, not supported by the unit officer, left no doubt that the prisoner was manipulating. Charge upheld.

(Plaintiff's Exhibit 1.)

It is clear that Plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff has failed to show that his constitutional rights were denied.

Defendants also assert that Plaintiff has failed to show that he is entitled to injunctive relief. However, because Plaintiff has failed to show that Defendants violated his constitutional rights, any request for injunctive relief is moot.

Finally, Defendant Caruso claims that she is entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to

impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

In this case, Plaintiff alleged that Defendant Caruso was responsible for an allegedly unconstitutional policy. Such allegations are sufficient to show that Defendant Caruso was personally involved. However, as noted above, because Plaintiff has failed to show that his constitutional rights were violated by the alleged misconduct in this case, Defendant Caruso is entitled to summary judgment.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, the court will grant Defendants' Motions for Summary Judgment (docket #39 and #50) and dismiss this case in its entirety.

A Judgment consistent with this Opinion will be entered.


Dated:      9/28/2010                          /s/ R. Allan Edgar
                                           R. Allan Edgar
                                           United States District Judge